CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
for Ch'v'/le
AUG 0 1 2007
JOHN F. CORCORAN, CLERK
BY: Fay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| LEROY M. THURSTON, JR., *Plaintiff*, | | CIVIL NO. 3:06cv00045 |
| v. | | MEMORANDUM OPINION and ORDER |
| AMERICAN PRESS, LLC, *Defendant* | | JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant's Motion for Summary Judgment, filed on June 19, 2007 (docket entry no. 48). Although I find that Plaintiff has made out a prima facie case of retaliation under Title VII, Defendant has asserted a legitimate, non-discriminatory reason for its failure to hire Plaintiff (namely, its inability to secure adequate prior employment references). Because Plaintiff has failed to put forth any evidence whatsoever to show that that reason is merely a pretext for retaliation, he must rely on his evidence for his prima facie case. I find that that evidence, which consists merely of an inference of retaliation and of Plaintiff's unsubstantiated claims that Defendant, its agents, and its attorney have lied, is insufficient to show pretext. Accordingly, I will grant Defendant's motion for summary judgment and dismiss this case.

## I. BACKGROUND

Plaintiff applied for a job with Defendant in 2000. Plaintiff claims Defendant failed to hire him then because Defendant learned that Plaintiff had earlier sued his previous employer, the Louisa County school system. After Defendant rejected Plaintiff's application on January 2, 2001, Plaintiff filed a complaint against Defendant with the Equal Employment Opportunity

Commission ("EEOC") ("2001 EEOC Complaint"). The EEOC issued Plaintiff a right-to-sue letter on March 30, 2001; the charge notified Plaintiff that he had ninety days within which to sue Defendant.

Plaintiff applied again for a job with Defendant, this time on June 30, 2005. Defendant again rejected Plaintiff's application; Plaintiff alleges that this was because of the 2001 EEOC Complaint against Defendant. According to Plaintiff, Defendant's Human Resources manager at the time, Tessy Schlemmer, asked Plaintiff during the initial interview why he had filed charges against Defendant in 2001 and allegedly told Plaintiff that he should seek employment elsewhere.

Plaintiff sued, alleging retaliation in violation of Title VII.[1] Defendant later moved for summary judgment, arguing that Plaintiff's retaliation claim for Defendant's alleged failure to hire in 2001 was time barred and that with respect to the 2005 alleged failure to hire, first, there was no genuine issue of material fact with respect to causation in Plaintiff's prima facie case and second, even assuming a prima facie case, there was no genuine issue of material fact with respect to the requirement that Plaintiff show that Defendant's proffered reason for not hiring him was a pretext for retaliation. I granted Defendant's motion with respect to the 2001 failure to hire, but denied the motion with respect to the 2005 failure to hire. In so doing, I concluded that there was a genuine issue concerning two material facts: (1) who first broached Plaintiff's filing of the 2001 EEOC Complaint during Plaintiff's 2005 interview and (2) the timing and manner of Schlemmer's statement that Plaintiff should seek other employment.

Based on additional evidence, Defendant has again moved for summary judgment on Plaintiff's 2005 failure-to-hire claim. In essence, Defendant argues that Plaintiff cannot properly

---

[1] "It shall be an unlawful employment practice for an employer to discriminate against any ... applicant[] for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3(a) (West 2007).

state a Title VII claim because he cannot establish a prima facie case of retaliation and because he cannot show that Defendant's reason for not hiring him was merely a pretext for retaliation. Although these are the same general arguments Defendant made in support of his initial motion for summary judgment, Defendant states that additional discovery now shows that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that the Rule 56(c) standard has been met. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*, 763 F.2d 604, 610 (4th Cir. 1985).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... [must] by affidavits or as otherwise provided in ... [Rule 56] set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). If the proffered evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Anderson*, 477 U.S. at 242). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* (quoting *Celotex*, 477 U.S. at 317). In short, "[s]ummary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 719 (4th Cir. 2003).

### III. DISCUSSION

In a Title VII retaliation case, a plaintiff may utilize the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir. 1998). In doing so, a plaintiff "must first establish a prima facie case of retaliation, whereupon the burden shifts to the employer to establish a legitimate non retaliatory reason for the action." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). "If the employer sets forth a legitimate, non retaliatory explanation for the action, the plaintiff then must show that the employer's proffered reasons are pretextual or his

- 4 -

Case 3:06-cv-00045-NKM-BWC   Document 56   Filed 08/01/07   Page 4 of 15   Pageid#: 320

claim will fail." *Id.* A plaintiff can prove pretext by showing that the defendant employer's explanation is unworthy of credence or by offering other circumstantial evidence that is sufficiently probative of retaliation. *See id.* But a plaintiff is not required to offer *additional* evidence to show pretext other than that which he offered to make out his prima facie case; the plaintiff can survive summary judgment so long as he has offered sufficient evidence to allow a reasonable jury to disbelieve the defendant's proffered reason for not hiring him. *E.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–49 (2000).

## A. Plaintiff's Prima Facie Case

To establish a prima facie case of retaliation, Plaintiff must show three elements by a preponderance of the evidence: (1) that he engaged in a protected activity, (2) that Defendant took an adverse employment action against Plaintiff,[2] and, relevant to the instant discussion, (3) a causal connection between the protected activity and the adverse employment action. *E.g., Price*, 380 F.3d at 212; *Dowe*, 145 F.3d at 656; *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). The only contested element here is causation. Defendant argues (1) that it was Plaintiff—not Defendant—who first broached the subject of Plaintiff's 2001 EEOC Complaint, (2) that generally, the mere passage of time tends to negate an inference of discrimination, and (3) that Defendant's activities after Plaintiff disclosed the 2001 EEOC Complaint all show that there was no causal connection between Plaintiff's 2001 EEOC Complaint and Defendant's decision to not hire him in 2005.

In order to show a causal connection, Plaintiff must show that Defendant failed to hire

---

[2] The Fourth Circuit has suggested that the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405 (2006), may have altered "our circuit's formulation of the second element of the prima facie" Title VII retaliation case. *See Lettieri v. Equant Inc.*, 478 F.3d 640, 649–50 & n.2 (4th Cir. 2007). But, as in *Lettieri*, the analysis in "*Burlington Northern* does not affect [my] analysis because the second element is not an issue" here. *Lettieri*, 478 F.3d at 650 n.2.

him "*because* the plaintiff engaged in a protected activity." *Dowe*, 145 F.3d at 657. Therefore, "by definition," *id.*, "a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [him] engaging in protected activity," *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (addressing the causal connection prong in a retaliation claim in a First Amendment context); *see also Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006) (stating that a plaintiff "must be able to show that the relevant [employer] officials [be] aware of [the protected activity] at the time the alleged retaliation occurred"), *cert. denied*, 127 S. Ct. 659 (2006); *Causey v. Balog*, 162 F.3d 795, 803–04 (4th Cir. 1998) (same).

Here, there is no question that Defendant knew about Plaintiff's 2001 EEOC Complaint. Defendant has provided evidence that it was Plaintiff who first broached the subject: Plaintiff included a copy of the 2001 EEOC Complaint with his application on June 30, 2005—twelve days before Plaintiff's interview with Schlemmer. (*See* Michael Henshaw Decl. ¶ 4, June 19, 2007) Plaintiff had earlier stated at oral argument that it was Schlemmer who first brought up the 2001 EEOC Complaint. (Mem. Op. 4, Apr. 4, 2007) The only genuine issue is which party first broached the subject. For purposes of Plaintiff's prima facie case, it is sufficient that Defendant was aware of the protected activity, regardless of which party first brought up the issue.

Defendant argues, however, that in Title VII retaliation cases, "generally the passage of time ... tends to negate the inference of discrimination." *Price*, 380 F.3d at 213; *see also Dowe*, 145 F.3d at 657 (holding that although "evidence that the alleged adverse action occurred *shortly* after the employer became aware of the protected activity" is sufficient to make a prima facie causation case, "the opposite [is] equally true"—"[a] lengthy time lapse between the employer

becoming aware of the protected activity and the alleged adverse employment action ... negates any inference that a causal connection exists between the two").

Although Defendant's argument is true, retaliation in failure-to-hire cases is different from retaliation in cases involving an employee whose protected activity took place while employed by his employer, a difference not lost on the Fourth Circuit in *Price*. In early 1995, plaintiff–employee Price applied for a job with the defendant–employer. *Price*, 380 F.3d at 211. The defendant's initial screening of applicants left four people, including the plaintiff, contending for two available positions. *Id.* Although the defendant interviewed the plaintiff, the defendant did not hire him. *Id.* Believing he had been discriminated against, the plaintiff filed a complaint with the EEOC in early 1996. *Id.* at 211–12. Later in 1996, the plaintiff applied for a different position with the same defendant–employer; the same official who had rejected the plaintiff's application in 1995 similarly rejected the plaintiff's application again in 1996, again following an initial screening and interview. *Id.* at 212. The plaintiff sued in federal court, claiming that the defendant had retaliated against him in 1996 for his filing an EEOC complaint against the defendant in 1995. *Id.*

The district court granted the defendant's motion for summary judgment, *id.*, but the Fourth Circuit reversed, *id.* at 213. In analyzing the prima-facie element, the Fourth Circuit restated the general rules that, absent other evidence of causation, (1) temporal proximity between the protected activity and the adverse employment action tends to *support* an inference of causation, *id.* (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam)), and (2) temporal remoteness between the protected activity and the adverse employment action tends to *negate* an inference of causation, *id.* The Fourth Circuit then explicitly assumed without deciding "that in the failure-to-hire context, the *employer's*

*knowledge* [of the protected activity] coupled with an *adverse action taken at the first opportunity* satisfies the causal connection element of the prima facie case." *Id.* (emphases added); *see also id.* ("Though we regard it as a very close question, we conclude that [the plaintiff] has established a prima facie case of discrimination because a reasonable trier of fact could conclude that [the defendant] knew of the protected activity and because [the defendant], *at the first available opportunity*, declined to hire [the plaintiff]." (emphasis added)).

Other courts have adopted this reasoning. For example, in *Porter v. California Department of Corrections*, 419 F.3d 885 (9th Cir. 2005), the Ninth Circuit suggested that the mere fact that an individual employer–defendant did not retaliate against the employee–plaintiff until the defendant was in a position to do so would likely be sufficient to support an inference of a causal connection. *See Porter*, 419 F.3d at 895. Notably, however, the Ninth Circuit pointed out that the plaintiff had provided additional evidence supporting such an inference.

The logic in *Price* and *Porter* has some superficial appeal, especially in this case: after all, it was *this* Plaintiff who, in 2001, filed an EEOC charge against *this* Defendant alleging retaliation for Plaintiff's earlier filing of an EEOC charge against a previous employer. Then, five years later—and at the first available opportunity for Defendant to retaliate—*this* Plaintiff again applied for a job with *this* Defendant and was again denied. A reasonable jury could certainly conclude that Defendant's failure to hire Plaintiff in 2005 was because Plaintiff had filed a complaint against it four years earlier.

But temporal sequence should not be confused with logical consequence. Indeed, the Fourth Circuit has stated specifically that "'[p]*ost hoc ergo propter hoc* is not enough to support a finding of retaliation.'" *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 182 (4th Cir. 1998) (quoting *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179 (7th Cir.

1998) (stating that the inquiry on appeal following a completed trial involved not the plaintiff's prima facie case but instead "the specific proofs and rebuttals of discriminatory motivation the parties have introduced," finding that no reasonable jury could find that the plaintiff had proved retaliation, reversing jury verdict for the plaintiff, and remanding with instruction to trial court to enter judgment for the defendant); *see also Bermudez*, 138 F.3d at 1179 ("Timing may be an important clue to causation, but does not eliminate the need to show causation—and [the plaintiff] really has nothing but the *post hoc ergo propter hoc* 'argument' to stand on." (citation omitted)). In fact, temporal proximity as a support of an inference of causation may be essentially meaningless in failure-to-hire cases because of the speediness of hiring process: the interview, and decision process are usually completed within a short period of time following the plaintiff's application. *See, e.g., Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1179 (10th Cir. 2000). In *Kelley*, the Tenth Circuit noted that "temporal proximity will almost always occur in failure-to-hire cases because employers naturally make hiring decisions soon after receiving applications and conducting interviews." *Id.* "Thus, temporal proximity alone will usually be insufficient to establish a causal connection between the protected opposition to discrimination and not being hired." *Id.*

And, temporal proximity may be even less of a factor in failure-to-hire cases because the plaintiff is making an affirmative request of the employer after he engaged in the protected activity. *See, e.g., Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004) (citing *Kelley* and stating that "[t]emporal proximity is much less suspicious when the adverse action is the denial of an affirmative request the plaintiff made subsequent to the protected activity"). Such a situation is different from retaliation cases in which the plaintiff is already employed by the defendant and the defendant independently decides to take some kind of adverse employment

action against the plaintiff. In such cases, it is much easier to infer that the employer took the adverse action because of the protected activity because there is nothing instigating the employer to make a decision that could be construed as an adverse employment action; in failure-to-hire cases, however, it is the plaintiff who is forcing a prospective employer to make a binary, yes–no decision. And, obviously, a "no" decision is an adverse employment decision.

It appears, however, that relevant Fourth Circuit law favors a finding that Plaintiff here has made a prima facie case. Importantly, *Price* assumed that in failure-to-hire cases, "the employer's knowledge [of the protected activity] coupled with an adverse action taken at the first opportunity satisfies the causal connection element of the prima facie case." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). The Fourth Circuit even characterized it "as a very close question" but concluded that a prima facie case had been made "because a reasonable trier of fact *could* conclude" there was causation. *See id.* (emphasis added). Additionally, the Fourth Circuit has held that establishing a prima facie case is, quite unremarkably, a "less onerous burden" than is conclusively establishing a causal connection. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989); *see also Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Although Karpel presents little or no direct evidence of a causal connection between her protected activity and Inova's adverse action, little is required."); *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir.1991) (holding that the plaintiff made a prima facie case even though there was no evidence of causal connection other than the fact that the plaintiff was fired after bringing a lawsuit). *But see, e.g., Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1179 (10th Cir. 2000) ("Kelley could have still established a causal connection through other evidence linking the [protected activity] with the … decision not to hire him. The record reveals no other evidence of a causal connection that was presented, and thus Kelley cannot make out a prima facie case for retaliation.").

– 10 –

Case 3:06-cv-00045-NKM-BWC    Document 56    Filed 08/01/07    Page 10 of 15    Pageid#: 326

Therefore, I find that Defendant's knowledge here of Plaintiff's protected activity (regardless of who broached that subject), coupled with Defendant's failure to hire Plaintiff at the first opportunity it had to do so satisfies the causal connection prong of Plaintiff's prima facie retaliation claim. A reasonable trier of fact *could* conclude—based only on this evidence—that Defendant did not hire Plaintiff because of his earlier-filed EEOC complaint against it.

## B. Defendant's Legitimate, Non-Retaliatory Explanation

The burden therefore shifts to Defendant to "set forth a legitimate, non retaliatory explanation" for not hiring Plaintiff. *Price*, 380 F.3d at 212. Here, Defendant has done exactly that: Schlemmer has stated in detail how she could not secure appropriate references from Plaintiff's earlier employers. (*See* Schlemmer Decl. ¶¶ 7–13; Henshaw Decl. ¶ 6, June 19, 2007) Indeed, Defendant spent considerable time and effort in examining Plaintiff to determine whether he was an appropriate candidate for employ: three different agents of Defendant interviewed Plaintiff over the course of three weeks, during which time Schlemmer was attempting to contact at least three of Plaintiff's prior employers. (*See* Schlemmer Decl. ¶¶ 4, 6–13; Henshaw Decl. ¶¶ 5–7,[3] June 19, 2007) The inability of an employer to secure appropriate employment references is certainly a legitimate, non-retaliatory reason for not hiring a candidate. *See, e.g., Branch v. County of Chesterfield*, No. 01–CV–302, 2001 WL 1943878, at *7 (E.D. Va. Oct. 12, 2001) (unpublished opinion), *aff'd*, 32 F. App'x 690, No. 01–2365, 2002 WL 570673 (4th Cir. Apr. 17, 2002) (unpublished opinion) (per curiam). This conclusion is buttressed here by the fact that Defendant interviewed Plaintiff multiple times for the position.[4]

---

[3] This Declaration contains two paragraphs that are numbered "5."
[4] Henshaw interviewed Plaintiff by telephone on July 6, 2005 (Henshaw Decl. ¶ 5(1), June 19, 2007), Schlemmer interviewed Plaintiff on July 11, 2005 (Henshaw Decl. ¶ 5(2), June 19, 2007), and Taylor interviewed Plaintiff on July 27, 2007 (Henshaw Decl. ¶ 5(2), June 19, 2007).

– 11 –

## C. Plaintiff's Showing of Pretext

Under the *McDonnell Douglas* framework, then, Plaintiff "must show that [Defendant's] proffered reason[]" is merely pretext; otherwise, "his claim will fail." *Price*, 380 F.3d at 212. To prove pretext, a Plaintiff must (1) show that Defendant's reason is "unworthy of credence" or (2) "offer[] other forms of circumstantial evidence sufficiently probative of retaliation". *Id.* (alteration in original omitted). But Plaintiff need not offer any *additional* evidence to show pretext other than that which he offered to make out his prima facie case; he can survive summary judgment so long as he has offered sufficient evidence to allow a reasonable jury to disbelieve the defendant's proffered reason for not hiring him. *E.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–49 (2000).

Here, Plaintiff's "evidence" consists of: (1) an inference of discrimination arising from an adverse employment action taken at the first opportunity Defendant had to take such action, *see* discussion *ante*; (2) Schlemmer's advice to Plaintiff to seek other employment; (3) unsubstantiated allegations that Schlemmer, Henshaw, and Defendant's attorney have lied in their representations to the Court;[5] and (4) allegations of what his evidence *would* show if the Court would do the investigating for Plaintiff, without the actual evidence itself.[6]

Plaintiff would like me to infer from Schlemmer's advice that he continue to seek employment elsewhere that Defendant must have retaliated against him. But there is evidence in the record that Schlemmer herself routinely gave that advice to potential employees and that it

---

[5] Plaintiff claims that "I can prove that Craig Wood and Tess Schlemmer have lied" about how many times Defendants agents called him in August 2005. (Pl.'s Resp. to Def.'s Mot. for Summ. J. 1, docket entry no. 50) "This is called perjury on the part of Craig Wood and Tess Schlemmer." (*Id.*) "I can prove that [Henshaw's] declaration is false." (*Id.*)

[6] "All the Court has to do is get in touch with Verizon and they will find only one call came from American Press." (Pl.'s Resp. 1) "I am asking the Court to ask the Virginia State Bar to bring charges against Craig Wood for this reason." (*Id.*) "They need the declaration of Mr. Taylor, Plant Manager ...." (*Id.*) "Plaintiff would like the Court to get the telephone record[s] from Verizon for the months of July, August and September, 2005, in which I can show that Tess Schlemmer and law[y]er Craig Wood perjured themselves." (Pl.'s Mot. for Telephone Records 1,

was Defendant's usual practice to give that advice. (*See* Schlemmer Decl. ¶ 14; Henshaw Decl. ¶ 7, June 19, 2007) Although Plaintiff argues that Schlemmer and Henshaw have lied about this, Plaintiff has offered no actual proof of his own that Schlemmer or Henshaw (or Defendant's attorney) lied; instead, he asks the Court to obtain Verizon phone records, which will show that Defendant's agents have been untruthful in their declarations and statements to the Court. I note, however, that it is not up to the Court to pursue Plaintiff's claim. *See, e.g., Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (refuting the notion of "requiring district courts to assume the role of advocate for the *pro se* plaintiff" (internal quotation marks omitted)).

Additionally, Plaintiff does not dispute the evidence that Defendant was unable to secure appropriate employment references, and, therefore, I cannot infer that Defendant's reason for not hiring Plaintiff is unworthy of credence. As the Supreme Court has held, appropriate factors for a district court to consider here include "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." *Reeves*, 530 U.S. 133, 149–49 (2000); *see also Price*, 380 F.3d at 213–14 (upholding summary judgment in retaliation case in which employer had only a weak prima facie case and weak showing of pretext). Plaintiff's prima facie case is extremely weak, there is no proof that Defendant's explanation is false, and there is no evidence from which I could infer retaliation.

Therefore, I conclude that Plaintiff has failed to raise a genuine issue of material fact and that Defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment, therefore, must be granted.

---

July 26, 2007, docket entry no. 55)

- 13 -

Case 3:06-cv-00045-NKM-BWC   Document 56   Filed 08/01/07   Page 13 of 15   Pageid#: 329

To hold otherwise would mean that a plaintiff who broaches—at the first opportunity during the hiring process—the subject of his earlier-taken protected activity and who is armed only with evidence consisting of (1) an inference drawn from temporal sequence and (2) unsubstantiated allegations that Defendant's agents and attorney have lied under oath would be entitled to survive summary judgment. If this were the case, any person who has taken activity protected by Title VII and who later applies for a job by telling the prospective employer about the protected activity would be able to get to a jury merely by stating the employer lied. I find this proposition untenable.

Accordingly:

(1) Defendant's Motion for Summary Judgment, filed on June 19, 2007 (docket entry no. 48), is hereby GRANTED;

(2) Plaintiff's filing of June 25, 2007, (docket entry no. 50), which was docketed as a motion to dismiss, but is construed to be a response to Defendant's Motion for Summary Judgment, is hereby DENIED;

(3) This case is hereby DISMISSED WITH PREJUDICE;

(4) The Clerk of the Court is hereby ORDERED TO STRIKE this case from the docket of the court;

(5) Plaintiff's motion to have the Court subpoena witnesses (docket entry no. 34) is hereby DENIED AS MOOT; and

(6) Plaintiff's motion for telephone records and to subpoena witnesses (docket entry no. 55) is hereby DENIED AS MOOT.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Order to both parties.

ENTERED: _____
United States District Judge

8-1-2007
Date